1  RIDOUT LYON + OTTOSON, LLP
   CHRISTOPHER P. RIDOUT (State Bar No. 143931)
2    E-mail: c.ridout@rlollp.com
   CALEB MARKER (State Bar No. 269721)
3    E-mail: c.marker@rlollp.com
   555 E. Ocean Blvd., Suite 500
4  Long Beach, CA 90802
   (562) 216-7380 Telephone
5  (562) 216-7385 Facsimile

6  ZIMMERMAN REED, PLLP
   BRADLEY C. BUHROW (CA Bar No. 283791)
7    E-mail: Brad.Buhrow@zimmreed.com
   14646 N. Kierland Blvd., Suite 145
8  Scottsdale, AZ 85254
   (480) 348-6400 Telephone
9  (480) 348-6415 Facsimile

10 *Attorneys for Plaintiff*

11

12                **UNITED STATES DISTRICT COURT**

13               **CENTRAL DISTRICT OF CALIFORNIA**

14 JEREMY TJADEN, individually, and          Case No.
   on behalf of all others similarly situated,
15                                           **CLASS ACTION COMPLAINT**
                  Plaintiff,
16                                           **(Jury Trial Demanded)**
   v.
17
   TOP RANK, INC.; EMMANUEL
18 PACQUIAO; MICHAEL KONCZ;
   ROBERT ARUM; TODD DUBOEF;
19 and, DOES 1-100, inclusive,
20                Defendants.

21

22       Jeremy Tjaden ("Plaintiff"), by and through his undersigned counsel, on

23 behalf of himself and all others similarly situated, brings the following Class

24 Action Complaint against TOP RANK INC., EMMANUEL PACQUIAO,

25 MICHAEL KONCZ, ROBERT ARUM, and TODD DUBOEF (collectively

26 "Defendants"), based upon information as belief and the investigation of counsel,

27 except for information based on personal knowledge, and hereby alleges as

28 follows:

---

CLASS ACTION COMPLAINT                                                    1

**PREAMBLE**

1.    The May 2, 2015 boxing match between Floyd Mayweather ("Mayweather") and Defendant Emmanuel "Manny" Pacquiao ("Pacquiao") was billed to the American (and worldwide) public as the "Fight of The Century" (hereinafter "Fight").  The May 2, 2105 Mayweather-Pacquiao Fight is believed to have been the highest grossing event in boxing history.  The Fight had the largest purse in boxing history with an estimated $180 million being paid to Mayweather and $120 million being paid to Pacquiao.  Both fighters' purses were tied to pay-per-view ("PPV") sales.  Apart from the estimated $70 million in gate proceeds, hundreds of thousands of boxing fans and patrons paid money to see the Fight on PPV broadcasts and though bar/restaurant admission prices that were showing the PPV.  PPV sales alone exceeded $300 million for the Fight.

2.    The Fight is now instead being referred to as the "Fraud of the Century" because Pacquiao intentionally did not disclose a shoulder injury that he was aware of in advance of the Fight as required, and unbeknownst to the public, including Plaintiff and the Class, entered the Fight injured and was unable to fully perform.    http://www.forbes.com/sites/leighsteinberg/2015/05/05/mayweather-pacquiao-fight-fraud-of-the-century/.

3.    Prior to the start of the Fight on May 2, 2015, Defendants were aware Pacquiao had suffered a torn rotator cuff and that the injury would hinder his performance.   That fact was intentionally concealed by Defendants from the public. At the May 1, 2015 weigh-in, Defendants Pacquiao and Koncz signed a Nevada State Athletic Commission medical form under penalty of perjury that had "no" checked next to a question asking if the boxer had suffered a shoulder injury. The form also includes notes that Pacquiao could take an injection of the anti-inflammatory prescription drug Toradol, which Nevada State Athletic Commission Chairman Francisco Aguilar stopped Pacquiao from taking before the fight.

CLASS ACTION COMPLAINT                                                    2

4.     Upon information and belief, Pacquiao received a cortisone injection on April 6, 2015, and rested his right arm.[1] After the Fight, Pacquiao said the shoulder was functioning at 60% before the Fight and that he believed the injection would give him full range of motion.  *Id.* In comments Pacquiao made Sunday, May 3, 2015, to reporters from the Philippines and translated by one of his assistants, Pacquiao said, "I didn't want to disappoint the fans so we decided to continue the fight." *Id.*

5.     By failing to disclose that one of the fighters (Pacquiao) was injured prior to the Fight, while still promoting and advertising the Fight as a fair and honest sporting event between two healthy and uninjured participants, Plaintiff

---

[1]   http://www.latimes.com/sports/boxing/la-sp-sn-pacquiao-mayweather-lawsuit-shoulder-20150505-story.html

CLASS ACTION COMPLAINT                                                              3

and the Class were deprived of what they paid for and injured financially.

6. As Leigh Steinberg's commentary in *Forbes* on May 5, 2015 explains, as a result of Defendants' failure to disclose the known injury to Pacquiao, while representing and/or implying the opposite to the public, "The paying public was fleeced."

> Manny Pacquiao revealed after the fight that he had a damaged shoulder which he knew about for some time. He tore his rotator cuff, which seriously impacts the ability to throw punches. Each boxer has to sign a form stating all injuries that he knows about. Had the Nevada Athletic Commission been aware of the injury, they likely would have postponed the fight. Pacquiao asked for a painkiller combination to be injected just hours prior to the bout–the commission refused to allow this, even though it was non-narcotic, because they deemed it too close to the fight. Cisco Aguilar, the Nevada Athletic Commission chairman told the <u>Daily News</u>, "You don't want them to be masking the pain. If they're masking the pain, they are potentially going to have some long-term damage that they may not have had."

> Final Pay-per-view buys have not yet been revealed. A conservative three million buys would have generated $300 million in revenue. That means that Mayweather made $180 million and Pacquiao made $120 million for a fight that did not pit two healthy fighters. The public was not told and tickets went for absurdly high amounts of money. The pay-per-view charge for HD was $100 per household, significantly higher than any prior fight. The paying public was fleeced.

Steinberg, "Mayweather-Pacquiao Fight: "Fraud of The Century," *Forbes*, May 5, 2015, http://www.forbes.com/sites/leighsteinberg/2015/05/05/mayweather-

pacquiao-fight-fraud-of-the-century/.

7.    *USA Today* further commented on May 5, 2015:

This is worse than simply underperforming. This is stupidity incarnate, and truly confirms that this fight was only about the money.

A prime Pacquiao doesn't set a single foot into that ring May 2 if he's carrying such a significant injury. He doesn't put his record, reputation, or health on the line against a tomato can, never mind an undefeated Mayweather. No, the Pacquiao of old would have put the fight on hold and allowed himself the nine months it would have taken to heal from surgery.

That's what a fighter with a desire to win would have done. That's what any competitor would have done. But by fighting anyway, Pacquiao made the decision to take the loss and the money now. On the Friday leading up to the fight, Pacquiao was asked by a Nevada State Athletic Commission in a pre-fight examination and questionnaire whether he had any injuries to his shoulders, elbows, or hands that would require examination.

Pacquiao checked "no" and into the ring he went.

Winning wasn't important. How could you argue otherwise? If it was, he wouldn't have fought. It's simple as that. But Pacquiao did fight, and his injury affected his signature right hook so severely that he threw approximately 400 fewer punches than normal.

It wasn't a heroic performance. It wasn't gritty or determined.

It was stupid, wasteful, and disingenuous.

Foss, "Manny Pacquiao's Stupid Decision Cost Us the Fight of the Century," *USA Today*, May 5, 2015, http://ftw.usatoday.com/2015/05/many-pacquiao-rotator-cuff-injury-floyd-mayweather-fight-stupid-dumb-why.

CLASS ACTION COMPLAINT                                                    5

8.     Based on the foregoing, and as further alleged below, this class action lawsuit seeks restitution and other relief for persons who paid money to see a legitimate fight, promoted and advertised as a legitimate and fair sporting event between fit and able opponents, but were denied that after parting with their money because Pacquiao and Defendants failed to disclose injuries they were aware of.  The truth was intentionally concealed from the public by Defendants in an attempt to maximize PPV and other fight revenue for them and so not to cause a delay or jeopardize the resulting payday to Pacquiao and Defendants if the truth became known. Had the truth been disclosed, instead of being concealed until after the fight began, Plaintiff and members of the Class would not have parted with their money and paid the sums that they did to see the fight.   Refunds would have been due had the truth been disclosed.  Because of Defendants' conduct, described further within, members of the Class were injured, incurring financial loss, while Defendants profited and were unjustly enriched.

## PARTIES

9.     Plaintiff Jeremy Tjaden is an individual who resides in this District in the State of California.  Plaintiff is a "person" as defined by Cal. Bus. & Prof. Code §17201.

10.     Plaintiff paid money in this District to view the PPV broadcast of the Mayweather-Pacquiao fight held on May 2, 2015 and suffered the loss of money, financial injury and damage as a result of the acts and omissions of Defendants described herein.  Had Defendants not conducted the deceptive and unfair acts alleged herein, Plaintiff would not have parted with his money to watch the Fight and would not have been injured.

11.     The Class, as defined below, consists of Plaintiff and all other persons who paid money in the State of California to watch the Mayweather-Pacquiao fight held May 2, 2015 via PPV or through attendance fees at a venue which had purchased the PPV broadcast.

CLASS ACTION COMPLAINT                                                                    6

12.     Defendant Top Rank, Inc. ("TPI") is a company whose state of incorporation and principal place of business is in the State of Nevada. TPI is engaged in the business of producing, promoting, and selling tickets to fighting events.  TPI was responsible for actions and decisions that led to the failure of Defendants to disclose Defendant Pacquiao's injuries prior to the Fight to the Class' detriment.

13.     Defendant Emmanuel Pacquiao ("Pacquiao") is a resident of the Philippines, owns property in California, and was responsible for actions and decisions that led to the failure of Defendants to disclose Defendant Pacquiao's injuries prior to the Fight to the Class' detriment.

14.     Defendant Robert "Bob" Arum ("Arum") is the Treasurer and Director of TPI and was responsible for actions and decisions that led to the failure of Defendants to disclose Defendant Pacquiao's injuries prior to the Fight to the Class' detriment.

15.     Defendant Todd DuBoef ("DuBoef") is the President of TPI and was responsible for actions and decisions that led to the failure of Defendants to disclose Defendant Pacquiao's injuries prior to the Fight to the Class' detriment.

16.     Defendant Michael Koncz ("Koncz") is the advisor of Defendant Pacquiao and was responsible for actions and decisions that led to the failure of Defendants to disclose Defendant Pacquiao's injuries prior to the Fight to the Class' detriment.

17.     Plaintiff is ignorant of the true names, capacities, relationships and extent of participation in the conduct herein alleged of the defendants sued herein as DOES 1 through 100, inclusive, but on information and belief alleges that said defendants are in some manner legally responsible for the unlawful actions, policies, and practices alleged herein, and therefore sues such defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges that each defendant named herein was the agent of the other, and the agent of all

defendants. Plaintiff is further informed and believes, and thereon alleges, that each defendant was acting within the course and scope of said agency at all relevant times herein, for the benefit of themselves, each other, and the other defendants, and that each defendant's actions as alleged herein was authorized and ratified by the other defendants. Once the identities of DOES 1 through 100 become known, Plaintiff will amend this complaint to describe and identify them in greater detail.

## JURISDICTION AND VENUE

18.   Jurisdiction is proper under 28 U.S.C. §1332(d)(2) because Plaintiff, a resident of the State of California, seeks relief on behalf of a California class, which will result in at least one class member belonging to a different state than that of Defendants. In addition, the matter in controversy exceeds $5,000,000 exclusive of interest of costs. Therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

19.   Venue is proper pursuant to 28 U.S.C. §1391 for the following reasons: (i) Plaintiff resides in the Lakewood, California which is within this District; (ii) Pacquiao maintains a residence in this District; (iii) the conduct complained of herein occurred within this District; and, (iv) Defendants conducted business within this District at all times relevant.

20.   Because Defendants conduct business within the State of California and this District, including that pertaining to the Fight, personal jurisdiction is established.

## FACTUAL ALLEGATIONS

21.   At all times relevant, Plaintiff has been an individual residing within the State of California.

22.   At all times relevant Defendants conducted business in the State of California, including PPV and other sales for the Fight.

23.    This is an action for compensation relating to Defendants' failure to disclose the injuries suffered by Defendant Pacquiao prior to the fight between Pacquiao and Mayweather held May 2, 2015 in Las Vegas, Nevada (the "Fight").

24.    Plaintiff paid money to watch The Fight on PPV, after months of hype and advertisements by Defendants that The Fight would be the "Fight of the Century."  The Fight was the highest-priced event of any kind sold in PPV history.

25.    Upon information and belief, Top Rank Inc. was one the promoters of the "Fight of the Century" and failed to disclose the fact that Defendant Pacquiao suffered a debilitating injury to the Nevada Athletic Commission ("NAC") prior to the fight, as is required by Nevada law.

26.    What was promoted as the "Fight of the Century" is now known to have been the "Fraud of the Century." This is due, entirely, to Defendant Pacquiao's injury, which resulted in what critics and viewers have widely called a "complete waste of time and money."[2]

27.    Plaintiff does not simply complain that Pacquiao was injured. Athletes are often injured in the course of training and competition.  Rather, Plaintiff complains that the injury, which occurred well before the May 2, 2015 Fight time, was deceptively hidden, suppressed and concealed so to entice Plaintiff and the Class to part with their money in ways they otherwise would not have.  Had the truth been disclosed, Plaintiff would not have paid anything to see the Fight.

28.    Pacquiao suffered a significant and debilitating injury in the weeks leading up to The Fight.  After the Fight, Promotor Bob Arum disclosed that the injury suffered by Pacquiao was a torn rotator cuff on his right shoulder (the "Injury").

---

[2]    Chase, "Mayweather-Pacquiao Was A Complete Waste of Time and Money", *USA Today*, May 3, 2015, http://ftw.usatoday.com/2015/05/mayweather-pacquiao-compete-waste-of-time-money-boxing-is-dead-payout.

29.    The Injury caused Pacquiao significant pain and weakness in his right arm, and resulted in Pacquiao throwing a much lower than normal punch output than he traditionally exhibited in other fights he has been in recent years. Ultimately, Pacquiao lost the Fight.

30.    Pacquiao's injury unquestionably materially, significantly and negatively affected the quality of the product sold: *i.e.* the competitiveness of the Fight as a sporting event between two able, healthy and uninjured participants. Consumers, including Plaintiff, were nonetheless left in the dark and encouraged to pay money to watch the Fight on PPV in their homes or through paid entry fees at establishments that purchased the fight on PPV.

31.    Plaintiff would not have spent money to watch the Fight had he known that Pacquiao had suffered a serious injury to his punching arm.

32.    Upon information and belief, Defendants failed to truthfully answer or disclose the information as required on the Nevada Athletic Commission disclosure form that was filled out by Pacquiao and others, including Defendant Michael Koncz, under penalty of perjury. (Copy published above)

33.    Upon information and belief, Pacquiao and others assisting him checked "No" on the NAC questionnaire which asked if he had a shoulder injury.

34.    These acts by Defendants constitute a material misrepresentation by affirmative statement and by omission.

35.    Had Defendants warned Plaintiff that Pacquiao suffered the Injury, Plaintiff would have reconsidered Plaintiff's purchase of the Fight.

36.    Failure to disclose that Pacquiao suffered the Injury unfairly induced Plaintiff's pay money to see the Fight. This omission was material to Plaintiff's purchase and induced his reliance to purchase the Fight. Further, Defendants had a duty to disclose to Plaintiff and other consumers of the Injury.

37.    Plaintiff and other purchasers of the Fight in the Class reasonably relied on Pacquiao and Mayweather being fit and healthy for the Fight. Indeed,

CLASS ACTION COMPLAINT                                                      10

Defendants' promotion of the Fight as the "Fight of the Century" induced Plaintiff and other reasonably minded consumers to believe that the participants in the Fight would be two top athletes that were fit, healthy and able to put forth a reasonable level of effort towards creating an entertaining experience that would live up to the hype.

38.    The value of the Fight supporting the significant viewing prices demanded and paid by Plaintiff and the Class was based on both participants being fit, healthy and able to perform to the full extent of their abilities at the time the Fight commenced and not suffering from injuries, such as the Injury.

39.    However, Defendants failed to inform consumers at the time of their purchase of the Fight of the Injury.

40.    This failure to disclose constitutes a misrepresentation by omission, as Defendants had a duty to disclose this material fact, which was not known by Plaintiff or other similarly situated consumers because Defendants possessed exclusive knowledge of the health and condition of the product (*i.e.,* the participants of the Fight).

41.    Defendants had a duty to disclose the Injury which would impact consumers' use of the products they were purchasing (*i.e.,* the Fight).

42.    In so misleading Plaintiff and other similarly situated consumers in the Class, Defendants deceived Plaintiff and others into believing that the product they paid for was of a certain quality and character it was not, as part of a widespread and systemic ruse to unfairly, fraudulently and unlawfully induce said consumers into purchasing the Fight at considerable, and previously undisclosed, additional expense.

43.    Furthermore, Plaintiff is not alone; Defendants improperly induced thousands of other consumers in the Class to purchase the Fight and generated hundreds of millions of dollars and revenues in ill-gotten gains due to their collective conspiracy to deceive. This act and omission constitutes unlawful,

unfair, and fraudulent conduct under California's Unfair Competition Law, Business & Professions Code §17200, *et seq.* (the "UCL"); California's False Advertising Law California Bus. & Prof. Code §17500, *et seq.* (the "FAL") and Consumer Legal Remedies Act ("CLRA").

## CLASS ALLEGATIONS

44.    Plaintiff brings this action on his own behalf and on behalf of all others similarly situated (the "Class").

45.    Plaintiff represents, and is a member of, the Class defined as follows: (i) all persons in the State of California; (ii) that paid money to watch the Fight on pay-per-view, directly or indirectly, via a third-party establishment showing the pay-per-view.

46.    Defendants and their employees or agents are excluded from the Class.  All Court employees are excluded from the Class.

47.    All requisite elements for class certification under Fed. R. Civ. P. 23(a) and 23(b)(2) and 23(b)(3) are satisfied.

48.    Plaintiff does not know the exact number of persons in the Class but, given the reported PPV revenues from the Fight and California's population, believes them to be in the several thousands, making joinder of all these actions impracticable.

49.    The identity of the individual members is ascertainable through Defendants' and/or Defendants' agents' records or by public notice.

50.    There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Class. The questions of law and fact common to the Class predominates over questions affecting only individual Class members and include, but are not limited to, the following:

a.    Whether Defendants' practices are "unfair" as defined by California Business and Professions Code §17200;

b.    Whether Defendants' practices are "illegal" as defined by

1             California Business and Professions Code §17200;

2       c.     Whether Defendants' practices are "fraudulent" as defined by

3             California Business and Professions Code §17200;

4       d.     Whether such practices violate California Business and

5             Professions Code §17200;

6       e.     Whether Defendants violated California Bus. & Prof. Code

7             §17500, *et seq.*;

8       f.     Whether Defendants violated the California Legal Remedies

9             Act, California Civil Code §1770 *et seq.*;

10      g.     Whether members of the Class are entitled to declaratory relief;

11      h.     Whether Defendants were unjustly enriched.

12       51.     Plaintiff will fairly and adequately protect the interest of the Class.

13       52.     Plaintiff has retained the undersigned counsel who are experienced in

14 consumer class action litigation and are competent to represent the Class.

15       53.     Plaintiff's claims are typical of the claims of the Class which all arise

16 from the same operative facts involving Defendants' practices.

17       54.     A class action is a superior method for the fair and efficient

18 adjudication of this controversy. Absent a collective action, no reasonable

19 consumer could seek legal redress for the conduct described and injuries suffered.

20       55.     Classwide damages are essential to induce Defendants to comply

21 with the laws alleged in the Complaint.

22       56.     Class members are unlikely to prosecute such claims on an individual

23 basis since the individual damages are small. Management of these claims is

24 likely to present significantly fewer difficulties than those presented in many class

25 claims, *e.g.*, securities fraud.

26       57.     Defendants have acted on grounds generally applicable to the Class,

27 thereby making appropriate final declaratory relief with respect to the Class as a

28 whole.

CLASS ACTION COMPLAINT                                 13

58.     Members of the Class are likely to be unaware of their rights.

59.     Plaintiff requests certification of a hybrid class combining the elements of Fed. R. Civ. P. 23(b)(3) for monetary damages and Fed. R. Civ. P. 23(b)(2) for equitable relief.

**FIRST CAUSE OF ACTION**
**Violation of the California False Advertising Act**
**(Cal. Bus. & Prof. Code §§ 17500 et seq.)**

60.     Plaintiff incorporates by reference each allegation set forth above.

61.     Pursuant to California Business and Professions Code §17500, *et seq.*, it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

62.     Defendants misled consumers by making misrepresentations and untrue statements about the Fight, namely, by instructing Plaintiff and other Class members that they were purchasing viewing rights to "the Fight of the Century" while failing to disclose that Pacquiao had already suffered the Injury and was not completely fit to perform.

63.     Defendants failed to disclose material facts to Plaintiff and other Class members at the time of their purchase of the Fight, as described in detail above. Defendants had a duty to disclose the fact that Pacquiao suffered the Injury, but failed to make such disclosures.

64.     Defendants knew that their representations and omissions were untrue and misleading, and deliberately made the afore-mentioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class members into paying for something of a much lesser quality and value than they reasonably believed they had purchased.

65.     The Injury was a material fact, which was concealed by Defendants. Reasonable consumers would want to know about the Injury in make a purchasing decision.

66.   As a direct and proximate result of Defendants' deceptive, misleading and false advertising, Plaintiff and the other Class members have suffered injury in fact and have lost money or property. Plaintiff reasonably relied upon Defendants' representations regarding the Fight, namely that the Fight would be "the Fight of the Century" while failing to disclose that Pacquiao had suffered the Injury. In reasonable reliance on Defendants' false advertisements, Plaintiff and other Class members purchased the Fight. In turn, Plaintiff and other Class members were provided with the Fight, which turned out to be of significantly less value than what they were led to believe they had purchased, and therefore Plaintiff and other Class members have suffered injury in fact for which compensation should be provided.

67.   The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class members in that Defendants persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendants' conduct will continue to cause irreparable injury to consumers unless restrained. A rematch is already being discussed.

68.   Based on the foregoing, Plaintiff is entitled to disgorgement and restitution to Plaintiff and all Class members of Defendants' revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable, as well as all other relief available by law or equity.

## SECOND CAUSE OF ACTION
## VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200
### [Against All Defendants]

69.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

70.   Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL. Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business

acts and practices.

71.     California Business & Professions Code §17200 prohibits any "unfair...business act or practice."

72.     In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

73.     Defendants' acts, omissions, misrepresentations, and practices as alleged herein constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

74.     Here, Defendants' conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class. Plaintiff and members of the Class have suffered injury in fact due to Defendants' unilateral decision to suppress and withhold highly material information about the Injury so as to induce consumers to purchase the Fight. Thus, Defendants' conduct has caused substantial injury to Plaintiff and the members of the Class.

75.     Moreover, Defendants' conduct, as alleged herein, solely benefits Defendants while providing no benefit of any kind to any consumer. Such deception utilized by Defendants convinced Plaintiff and members of the Class that the money paid for the Fight was a reasonable fair market value when, in fact, Defendants knew that they were selling an inferior product. Thus, the injury suffered by Plaintiff and the members of the Class is not outweighed by any countervailing benefits to consumers.

76.     Finally, the injury suffered by Plaintiff and members of the Class is

not an injury that these consumers could reasonably have avoided. After Defendants falsely represented, withheld and suppressed information pertaining to the Injury, Defendants continued to encourage consumers to purchase the Fight at the highest PPV price charged for any event in history. These consumers suffered injury in fact due to Defendants' charging of such exorbitant rates for such an inferior product, which was rendered inferior by Defendants' own material omissions. As such, Defendants took advantage of Defendants' position of perceived power and exclusive knowledge in order to deceive Plaintiff and the Class members who purchased the Fight. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.  Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

77.   Based on the foregoing, Defendants' conduct has violated the "unfair" prong of California Business & Professions Code §17200.

78.   California Business & Professions Code §17200 also prohibits any "fraudulent...business act or practice."

79.   In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public. The test for "fraud" as contemplated by California Business and Professions Code §17200 is whether the public is likely to be deceived. Unlike common law fraud, a §17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

80.   Here, not only were Plaintiff and the Class members likely to be deceived, but these consumers were actually deceived by Defendants. Such deception is evidenced by the fact that Defendants failed to disclose the Injury, a fact that would have been material to any reasonably minded consumer, including

Plaintiff, in their determination of whether to purchase the Fight and at what price. Plaintiff's reliance upon Defendants' deceptive statements and omissions is reasonable due to the unequal bargaining powers and knowledge of Defendants and Plaintiff.  For the same reason, it is likely that Defendants' fraudulent business practice would deceive other members of the public.

81.    Based on the foregoing, Defendants' conduct has violated the "fraudulent" prong of California Business & Professions Code §17200.

82.    California Business and Professions Code §17200, *et seq.* prohibits "any unlawful…business act or practice."

83.    As explained above and below with respect to the CLRA claim, Defendants deceived Plaintiff and other Class members by actively concealing The Injury.

84.    Defendants unlawfully violated the CLRA, as described below.

85.    These acts, representations and omissions by Defendants are therefore an "unlawful" business practice or act under Business and Professions Code §17200, *et seq.*

86.    Defendants used false advertising, marketing, and misrepresentations to induce Plaintiff and Class members to purchase the Fight. Had Defendants not falsely advertised, marketed or misrepresented the Fight, Plaintiff and Class members would not have purchased the Fight. Defendants' conduct therefore caused and continues to cause economic harm to Plaintiff and Class members.

87.    Based on the foregoing, Plaintiff is entitled to disgorgement and restitution to Plaintiff and all Class members of Defendants' revenues associated with their unlawful and fraudulent business practices, or such portion of those revenues as the Court may find equitable, as well as all other relief available by law or equity.

/ / /

/ / /

**THIRD CAUSE OF ACTION**
**VIOLATION OF CONSUMERS LEGAL REMEDIES ACT**
**CIVIL CODE §1750, *ET SEQ.***
**(Against All Defendants)**

88.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

89.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "CLRA") because Defendants' actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods or services to consumers.

90.     Plaintiff and each member of the Class are consumers as defined by California Civil Code §1761(d).

91.     PPV and other admissions purchased are goods and services within the meaning of Civil Code §1761(a).

92.     Defendants violated the CLRA in, at least, the following respects:

a.     in violation of  §1770(a)(5), Defendants represented that the Fight (whether viewed on PPV or otherwise, such as being present at a bar or restaurant that purchased the PPV) had characteristics, ingredients, and benefits which it did not have (because Pacquiao had suffered the Injury before the Fight started and thus, both participants were not fit and healthy to perform to the best of their ability);

b.     in violation of §1770(a)(7), Defendants represented that the Fight (whether viewed on PPV or otherwise, such as being present at a bar or restaurant that purchased the PPV)  was of a particular standard, quality or grade when it was of another (because Pacquiao had suffered the Injury before the Fight started and thus, both participants were not fit and healthy to perform to the best of their ability); and,

c.     in violation of §1770(a)(16), Defendants represented that the Fight (whether viewed on PPV or otherwise, such as being present at a bar or restaurant that purchased the PPV) was supplied in accordance with previous representations, when it was not (because Pacquiao had suffered the Injury before the Fight started and thus, both participants were not fit and healthy to perform to the best of their ability).

93.     Defendants knew, or should have known, that their representations and advertisements were deceptive, false and misleading.

94.     Damages on this Count alone are not sought at this time, only injunctive and declaratory relief and all other relief available at law or equity.

95.     Plaintiff has complied with Civil Code §1782(a) by notifying Defendant in writing, by certified mail, of the violations alleged herein and demanded that Defendants remedy those violations.

96.     If Defendant fail to rectify or agree to rectify the problems detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to California Civil Code §1782,  Plaintiff  will amend this Complaint to add claims for actual, punitive, and statutory damages pursuant to the CLRA, in addition to the other relief sought.

**FOURTH CAUSE OF ACTION**
**MONEY HAD AND RECEIVED**
**(Against All Defendants)**

97.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

98.     Through the above-described acts and conduct, Defendants received money, directly or indirectly, from Plaintiff and the Class which in equity and good conscious they cannot and should not retain.

99.     Through the above-described acts and conduct, Defendants have been unjustly enriched at the expense of Plaintiff and the Class.

100.   Defendants' continued retention of these sums is unjust.

101.   Based on the foregoing, Defendants should be required to disgorge all such profits, provide restitution and/or damages as may be available at law or equity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class members pray for judgment as follows:

A.   Certifying the Class as requested herein pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3);

B.   Restitution of the funds obtained by Defendants from the Class, directly or indirectly;

C.   Disgorgement of the funds obtained by Defendants from the Class, directly or indirectly;

D.   All reasonable and necessary attorneys' fees and costs provided by statute, common law, equity or the Court's inherent power;

E.   For equitable and declaratory relief; and,

F.   Any and all other relief that this Court deems just and proper at law or equity.

Respectfully submitted,

RIDOUT LYON + OTTOSON, LLP

Dated: May 6, 2015

/s/ *Caleb Marker*
CHRISTOPHER P. RIDOUT
CALEB MARKER
555 E. Ocean Blvd., Suite 500
Long Beach, CA  90802
(562) 216-7380 Telephone

ZIMMERMAN REED, PLLP
BRADLEY C. BUHROW
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254
(480) 348-6400 Telephone

*Attorneys for Plaintiff*